IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANGELIA NANCY HOBAN,                                    No. 3:15-cv-01786-HZ

            Plaintiff,

     v.

CAROLYN COLVIN, Acting                                  OPINION & ORDER
Commissioner, Social Security Administration,

            Defendant.


Merrill Schneider
SCHNEIDER KERR LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

      Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902


1 - OPINION & ORDER

Martha A. Boden
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorney for Defendant

HERNANDEZ, District Judge:

     Plaintiff Angelia Hoban brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI on September 6, 2011, alleging an onset date of July 15, 2008. Tr. 295-305. Her applications were denied initially and on reconsideration. Tr. 134-52, 172, 235-39 (DIB initial); Tr 193-212, 246- 251 (DIB reconsideration); Tr. 153-71, 173, 240-43 (SSI initial); 174-92, 213, 244, 249-50, 252 (SSI reconsideration). On December 3, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 42-74. On January 3, 2014, the ALJ found Plaintiff not disabled. Tr. 17-41. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

     In her benefit applications, Plaintiff asserted that she was unable to work because of nerve damage and seizures which cause her to feel disoriented, shake, and make her fall down. Tr. 370, 407-12. She also reported pain in her feet, legs, and back, and numbness. Tr. 373. At the

2 - OPINION & ORDER

time of the hearing, she was fifty-four years old.  Tr. 295 (showing date of birth).  She did not

graduate from high school, but she has a GED.  Tr. 322.  She also has training in cosmetology.

Id.  She has past relevant work as a hairdresser.  Tr. 59, 323.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

3 - OPINION & ORDER

disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 22. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of alcohol abuse and dependence with tremors and vision loss of the right eye, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 23-24.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), with no limitations regarding sitting, standing, or walking, and with the capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. Tr. 24. She should never climb ladders, ropes, or scaffolding; other climbing as well as balancing should be limited to occasionally. <u>Id.</u> Because of the right eye vision loss, Plaintiff should avoid even moderate exposure to hazards and she should not be required to do any jobs requiring fine depth perception. <u>Id.</u> She can use her hands,

4 - OPINION & ORDER

but not for fine manipulation.  Id.  She is further limited to unskilled work, preferably simple, repetitive tasks that require no more than occasional co-worker contact, no teamwork, and only incidental contact with the public.  Id.  She is expected to miss more than two days of work per month.  Id.  Relying on this RFC, the ALJ determined that Plaintiff is unable to perform any of her past relevant work.  Tr. 31.

At step five, the ALJ determined that with this RFC, which included limitations resulting from Plaintiff's alcohol abuse, Plaintiff is unable to perform any jobs that exist in significant numbers in the national economy.  Tr. 32.  The ALJ then determined that without her substance abuse she still suffers from severe impairments, but her RFC would no longer include the restriction of missing work more than two days per month.  Tr. 32-33.  With this limitation removed, she still would be unable to perform her past relevant work.  Tr. 33.  But, she is able to perform jobs that exist in significant numbers in the economy such as paper sorter/recycler or price marker.  Id.  Based on these findings, the ALJ determined that Plaintiff's substance abuse disorder is a contributing factor material to the determination of disability because she would not be disabled if she stopped drinking.  Tr. 34.  Thus, the ALJ determined that Plaintiff is not disabled.  Id.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal

quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred by (1) applying improper legal standards to analyze her substance abuse; (2) relying on medical opinions not contained in the record; (3) improperly rejecting medical opinions; and (4) formulating an RFC which was inconsistent with his findings.

I. Drug Addiction & Alcohol (DAA) Analysis

If a claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability, a claimant cannot be considered disabled for purposes of awarding benefits. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Therefore, where relevant, an ALJ must conduct a DAA analysis and determine whether a claimant's disabling limitations remain in the absence of drug and alcohol use. 20 C.F.R. §§ 404.1535, 416.935. If the ALJ finds a claimant to be disabled with the limitations caused by DAA, the ALJ then conducts the disability analysis a second time to determine whether substance abuse is material to disability. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to disability. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). If the remaining

limitations would not be disabling without drug or alcohol use, then the claimant's substance

abuse is material and benefits must be denied.  20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i);

Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007).  A claimant bears the burden of proving that

DAA is not a contributing factor material to his or her disability.  Parra, 481 F.3d at 748.

Bustamante requires a two-step process.  The ALJ first conducts "the five-step inquiry

without separating out the impact of alcoholism or drug addiction[,]" and then, if the claimant is

disabled under that analysis, the ALJ must repeat the five-step inquiry considering only those

limitations not caused by drug or alcohol abuse.  Bustamante, 262 F.3d at 955.  Plaintiff contends

that the ALJ did not properly execute the process as outlined in Bustamante because instead of

initially going through the full five-step inquiry while fully considering her substance abuse, the

ALJ attempted to separate out the effects of her alcohol use at the beginning of his analysis.  She

asserts that the ALJ's error requires remand.  Defendant contends that the ALJ properly followed

Bustamante because the ALJ first concluded that Plaintiff would be disabled while accounting

for her alcohol use, and then went through the five-step process a second time to conclude that

she would not be disabled once the impacts of her alcoholism were disregarded.

Although neither party gets it exactly right, I agree with Defendant that the ALJ's process

largely comported with Bustamante's requirements and caused no prejudice to Plaintiff.  As I

read the decision, the ALJ began his analysis with an unchallenged finding at step one that

Plaintiff met the insured requirements of the Social Security Act (SSA) through December 31,

2011 and had not engaged in substantial gainful activity since her July 15, 2008 alleged onset

date.  Tr. 22.

Then, the ALJ made a step-two finding that Plaintiff suffers from severe impairments of

alcohol abuse and dependence with tremors and loss of vision in her right eye.  Tr. 23.  At this point, the ALJ provided no analysis of these severe impairments or why he did not include any of the various mental disorder diagnoses Plaintiff has received from different practitioners during the relevant period as severe impairments.[1]  Instead, the ALJ stated that "[t]hese impairments are discussed more thoroughly below."  Id.  Next, the ALJ made the step-three finding that Plaintiff's impairments or combination of impairments did not meet or equal a listed impairment.  Id.  Again, very little reasoning is supplied for this finding.  Tr. 23-24.  The ALJ stated that support for the degrees of limitation assessed at step three were included within "Finding No. 5."  Tr. 23.

Finding Number 5 is the ALJ's RFC, followed by seven pages of discussion.  Tr. 24-31.  Here, the ALJ made a credibility determination, discussed the medical evidence, and found that Plaintiff has no independent severe mental health impairment.  Id.  The structure of the ALJ's decision suggests that Finding Number 5 will address Plaintiff's functional limitations by reviewing the medical evidence and Plaintiff's subjective limitations testimony.  But a closer reading of the decision shows that most of Finding Number 5 is the "more thoroughly below" discussion the ALJ previously referred to at step two to support his determination that Plaintiff's severe impairments were limited to her alcoholism and her vision loss.

This is established first by the ALJ's stating at the beginning of this discussion that while

---

[1]  The record shows that Plaintiff has been diagnosed with the following non-DAA mental impairments: (1) psychotic disorder, NOS; Tr. 1102, 1104 (treating psychiatrist Dr. Drakos); (2) borderline personality disorder; Id.; Tr. 612, 599 (Dr. Drakos); (3) schizoaffective disorder; Tr. 689 (examining psychologist Jeffery Sher, Psy.D.); (4) schizophrenia, paranoid type; depressive disorder; rule out cognitive disorder NOS; Tr. 680 (examining psychologist Daniel Scharf, Ph.D.); (5) mood disorder, NOS; rule out bipolar disorder; cognitive disorder, NOS; rule out learning disorders; rule out post-traumatic stress disorder; rule out schizophrenia; Tr. 521 (examining psychologist Kay Stradinger, Psy.D.); and (6) affective disorders; Tr. 183-84 (nonexamining state agency psychologist Bill Hennings, Ph.D.).

the record clearly supported the two impairments, questions remained regarding whether Plaintiff had any other impairments. Tr. 24 ("it is the severity of her diminished functional capacity that is questioned"; "What is less clear, however, is whether the claimant suffers from any other medically determinable impairment(s)"). Second, several pages later, the ALJ suggests that Plaintiff's underlying mental health concerns may not exist and he expressly rejects any "psychological diagnosis" given by the psychological consultants. Tr. 28. Third, after discussing the reports of three examining psychologists, the ALJ states: "I conclude that aside from a diagnosis [of] alcohol abuse and dependence, the claimant otherwise does not suffer from a *severe* mental health impairment[.]" Tr. 30. These references are clearly step-two findings, even though they are made in the context of discussing the RFC. After this finding, the ALJ moves on to discuss Plaintiff's functional capacity. Tr. 30-31.

The ALJ then made a step-four finding that Plaintiff cannot perform any past relevant work when her substance abuse is taken into account and further, she cannot perform any work that exists in significant numbers in the national economy. Tr. 31-32. Because he reached the conclusion that she is disabled while considering the effects of her alcohol use, Bustamante required the ALJ to perform the five-step analysis again, without considering the alcoholism. Tr. 32-34. The ALJ did so. At step two, he concluded that if she stopped the substance abuse, she would still have a severe impairment. Tr. 32. At step three, he concluded that without the substance abuse, she would not have an impairment or combination of impairments that met or equaled a listed impairment. Id. At step four, he issued a new RFC that omitted the limitation of being absent from work more than two days per month. Tr. 33. With that RFC, he found that Plaintiff could not perform her past relevant work but that she could perform jobs that exist in the

national economy in significant numbers.  Id.  Thus, because the alcoholism was material to the disability determination, she was not disabled.  Id.

Plaintiff is correct that the ALJ's opinion creates the impression that the first time he went through the five-step analysis, he improperly separated the effects of her alcoholism.  But, as I read the decision, the ALJ did so only as a way of determining Plaintiff's severe impairments.  In the ALJ's mind, presumably, and as gleaned from the structure and content of his decision, he was applying the Bustamante analysis by considering the effects of Plaintiff's alcoholism while proceeding through the five-steps initially and then, after determining that those effects would render her disabled, he did the five-step process again, this time omitting those effects.

It would have been more clear if the ALJ, in initially applying the five-step disability analysis, had expressly credited symptoms caused by Plaintiff's mental health issues or found her mental health issues to be severe impairments.  Undoubtedly, he would have reached the same result he did:  Plaintiff is disabled after the first application of the five-steps because she cannot perform her past relevant work or other jobs that exist in significant numbers in the national economy.  Then, in the second application of the five-step analysis which he was required to do under Bustamante, the ALJ could have engaged in the discussion comprising the bulk of his analysis and supporting his step-two determination that Plaintiff's impairments were limited to alcoholism and vision loss and did not include mental health issues.  That discussion would have unfolded in the same manner, but adjusted so that it was clear it was occurring in the second application of the five-step analysis.  Presumably, the ALJ would have reached the same result: Plaintiff's mental health issues were not severe impairments absent alcohol use.

On this issue, the ALJ's decision could have been more clear.  But, as I read it, the ALJ

10 - OPINION & ORDER

substantially complied with <u>Bustamante</u>'s requirements and considered Plaintiff's impairments

and functional limitations both with and without her alcoholism.  That is enough to have properly

addressed her substance abuse and what the ALJ determined were the effects of that abuse.

## II.  ALJ's Mental Health Findings

During the hearing, Plaintiff's attorney suggested to the ALJ that calling a medical expert

might be useful in this case because of the need to "parse out what limitations are due to what."

Tr. 68.  The attorney remarked that Plaintiff's prescription for anti-psychotic medications

indicates she suffers from more than just alcoholism.  Tr. 70.  To this, the ALJ responded that he

himself cannot figure out why doctors prescribe what they do.  <u>Id.</u>  He gave an example of

someone diagnosed with fibromyalgia who receives increasing amounts of opiates that the person

admits are unnecessary.  <u>Id.</u>  The attorney agreed that in that example, a physician may be trying

to appease the patient but he doubted that Dr. Drakos was prescribing an anti-psychotic to

Plaintiff for that reason.  Tr. 70-71.  The attorney continued and noted that given evidence of a

stroke, a possible cognitive disorder, possible schizophrenia, and Plaintiff's alcoholism, the

testimony of a medical expert would be useful.  Tr. 71.

The ALJ responded by stating:

> You know, one thing any honest psychological evaluator's going to tell you is that
> they cannot do a valid – they cannot make a valid psychological diagnosis without
> an extended period of sobriety.  That has just not happened in the last several
> years, certainly not during the time that these evaluations were made.  And not
> during that time that she was prescribed these drugs.

<u>Id.</u>  Then, the following exchange occurred:

> ATTY:  I mean she has some limitations that are probably related to alcohol.  But,
> I'm saying she probably has a lot of limitations related to those other non-alcohol
> diagnosis.  It would be useful if somebody could give us some insight into what -

ALJ:  And I just said you can't make a valid psychological diagnosis without an extended period of sobriety.

ATTY:  Well, that's what you're saying.  I meant I'm not sure if the stuff–

ALJ:  That's what I'm saying –

ATTY:  Well, I'm not sure –

ALJ:  you're right.

ATTY:  Yeah.

ALJ:  That's why I've had other psychologists[] in other cases[,] that's not part of this record[,] will tell you. . . .  But there's no way of knowing without an extended period of sobriety.

Tr. 71-72.

In his decision, the ALJ concludes that Plaintiff has no severe mental health impairments independent of her alcohol use.  This conclusion is based on the ALJ's assertion that a mental health diagnosis cannot be made without a period of abstinence.  The ALJ rejects the examining psychologists' opinions because those practitioners were unaware of her alcohol abuse history and did not have access to her full medical record, "which details no noteworthy period of abstinence that would allow for a confident mental health diagnosis." Tr. 28.  Later, he explains that Plaintiff drank heavily "during the entirety of the relevant adjudicative period with no period of extended sobriety that would allow for a dependable mental health diagnosis." Tr. 30.  And, once more, he explained this finding:

> I conclude that aside from a diagnosis of alcohol abuse and dependence, the claimant otherwise does not suffer from a *severe* mental health impairment as there is no way to establish, with any reasonable certainty, that the claimant's alleged psychotic, depressive, personality and cognitive problems would persist in the absence of alcohol abuse and dependence.

12 - OPINION & ORDER

Id.

Plaintiff argues that in concluding that a mental health diagnosis cannot be made without a period of abstinence, the ALJ improperly relied on medical opinions he referred to during the hearing from unnamed psychologists in other cases which were not subject to review or cross-examination by Plaintiff or her counsel. Plaintiff further agues that the assumption made by the ALJ regarding the necessity of abstinence is contrary to the Secretary's own regulations.

I agree with Plaintiff that the Administrative Record does not include any authority for the proposition that a competent mental health diagnosis cannot be made absent a period of abstinence for a person who exhibits mental health symptoms but also has a serious alcohol problem. During the hearing, the ALJ clearly referred to opinions outside the record. He cites to no other evidence in the record in his written decision to support that proposition. This was error.

Social Security Ruling (SSR) 13-2p, available at 2013 WL 621536, explains the SSA's policies regarding DAA. Two sections are notable here. First, the ruling addresses the issue of what to do if the claimant's co-occurring mental disorder(s) improve in the absence of DAA. 2013 WL 621536, at *9. The ruling provides:

> Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.

> To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.

13 - OPINION & ORDER

Id.  The ruling thus makes explicit that because medical science does not currently have a method for reliably predicting the improvement of a co-occurring mental disorder without substance abuse, the ALJ must rely on evidence in the case, and not exclusively on a medical expert, to ascertain the materiality of a claimant's DAA in the context of a co-occurring mental disorder. E.g., Hangin v. C[o]lvin, No. 2:14-cv-573, 2015 WL 4593414, at *2 (S.D. Ohio July 30, 2015) (under SSR 13-2p in analyzing co-occurring mental disorders, ALJ's decision must be supported by "other evidence in the record such as objective medical evidence (laboratory findings or medical signs), medical source evidence (medical history and statements concerning treatment), statements by the claimant and information from other sources, decisions by any governmental or nongovernmental agency, and information evidence from accepted medial sources such as licensed physicians and psychologists").

Second, the ruling separately addresses periods of abstinence, which the ruling does not define.  2013 WL 621536, at **12-13.  It notes that each substance of abuse has different intoxication and long-term physiologic effects with wide variations in the duration and intensity of substance use among claimants with DAA, as well as wide variations in the interactions of DAA with different types of mental disorders.  Id. at *12.  As a result, the SSA is "unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material in every case."  Id.

Plaintiff argues that the inference the ALJ made (that Plaintiff's mental health impairments cannot be assessed without a period of abstinence) is prohibited by SSR 13-2p because it runs contrary to the SSA's own assessment of the unreliability of the current DAA psychological research.  Without any other evidence in the record to support the ALJ's

proposition, his decision cannot stand.

Defendant does not appear to disagree with Plaintiff as to the interpretation of SSR 13-2p, but it argues that the ALJ's decision was supported by substantial evidence and thus, there is no violation of SSR 12-2p. I reject this argument. First, Defendant's argument does not account for the lack of any evidence in the record supporting the ALJ's assumption that no reliable mental health diagnosis can be made without a period of abstinence.

Second, in support of its argument, Defendant cites to records from Plaintiff's treating psychiatrist Dr. Nick Drakos, M.D. Defendant argues that these records show that Plaintiff's psychological symptoms abated "with decreased alcohol use and compliance with psychiatric medication." Def.'s Brief 6 (emphasis added). As the emphasized portion of that sentence shows, Defendant's own briefing acknowledges that Plaintiff's symptoms improved not just because she stopped or decreased her alcohol intake, but also when she took anti-psychotic medication.

Contrary to Defendant's argument, the cited records do not show that cessation of alcohol alone controlled Plaintiff's mental health symptoms. Tr. 599 (Aug. 28, 2008 Dr. Drakos chart note stating Plaintiff's mood had improved with the start of Celexa, and she had ten days of sobriety); Tr. 591 (Apr. 12, 2010 Dr. Drakos chart note stating that Plaintiff initiated Seroquel without difficulty and subsequently experienced a significant improvement in mood and significant reduction in paranoid feelings and resolution of voices; Plaintiff also reported she had stopped drinking after her last appointment); Tr. 589 (May 13, 2010 Dr. Drakos chart note stating that Plaintiff reported an increase in paranoia and voice symptoms and increased her Seroquel which resolved most of her symptoms; she continued to maintain sobriety); Tr. 587 (June 17,

2010 Dr. Drakos chart note stating that Plaintiff reported significant reduction in paranoia and voices "which now appear to be fairly well controlled by her Seroquel"; further noting that she had significantly reduced her alcohol intake); Tr. 585 (Aug. 25, 2010 Dr. Drakos chart note stating Plaintiff's paranoia and voices had decreased with abstention from alcohol but when they do occur, they are controlled with Seroquel); Tr. 1102 (Dec. 3, 2012 Dr. Drakos chart note stating that Plaintiff reported improvement on Seroquel and her voices had "virtually abated"; further noting that she reported reducing her drinking). At best, the records show anti-psychotic medication OR anti-psychotic medication and decreased alcohol intake together improved her condition.

Moreover, Plaintiff repeatedly told Dr. Drakos that she drank in order to quell her mental health symptoms. For example, in February 2009, Plaintiff reported to Dr. Drakos that she controlled episodes of paranoia and hearing voices by drinking. Tr. 595. She explained that these symptoms had been increasing as a result of her "recently embracing sobriety." Id. Dr. Drakos wrote that "since she discontinued drinking she relates that she has begun experiencing progressively more intrusive voices as well as paranoid feelings." Id. A little more than one year later, she again reported being off Seroquel, "experiencing a pattern of progressively intrusive and disturbing voices of a self-derogatory nature" and paranoid feelings which "she has been attempting to medicate . . . by resuming her longstanding pattern of drinking[.]" Tr. 593. Dr. Drakos's chart notes are not reasonably interpreted to establish that absent alcohol use, her mental health symptoms improved. Instead, absent psychiatric medications, such symptoms increased which then led to increased drinking. Once the symptoms were stabilized with appropriate anti-psychotic medication, the drinking diminished.

16 - OPINION & ORDER

Also, Dr. Drakos's diagnoses indicate that Plaintiff suffers from a psychotic disorder or borderline personality disorder, complicated, but not caused, by alcohol dependence.  Tr. 612 (July 17, 2006 Dr. Drakos chart note referring to "further destabilizing in respect to her borderline personality disorder complicated by alcohol dependence"); Tr. 597 (Jan. 30, 2009 Dr. Drakos chart note referring to her marginal stability "in respect to her borderline personality disorder complicated by alcohol dependence after being off medication for 2 months"); Tr. 1104 (Oct. 30, 2012 Dr. Drakos chart note noting that Plaintiff appeared "fairly symptomatic in respect to her psychotic disorder, NOS complicated by borderline personalty disorder and alcohol dependence").; Tr. 1102 (Dec. 3, 2012 Dr. Drakos chart note indicating improvement "in respect to her psychotic disorder, NOS complicated by borderline personality disorder and alcohol dependence" after being back on Seroquel).  His repeated references to her impairments in this manner indicate that her mental health diagnoses were independent of her substance abuse, even if they were admittedly "complicated" by it.

Defendant asserts that "[b]ased on a review of Dr. Drakos' records, the ALJ concluded that Plaintiff did not have a severe mental health impairment in the absence of an alcohol use disorder." Def.'s Brief 7.  Based on my review of the record, and the discussion above, I reject this argument.  As a result, the ALJ did not comply with SSR 13-2p because he failed to rely on evidence in the record to support his conclusion that a reliable mental health diagnosis could not be made absent a period of abstinence, and he failed to otherwise support his finding that absent her alcohol use, Plaintiff's mental health disorders were not severe impairments.

III.  Medical Opinions

Plaintiff argues that the ALJ improperly rejected the opinions of three examining

psychologists as well as the opinion of the nonexamining state agency psychologist.

A.  Examining Psychologists

Kay Stradinger, Psy. D., evaluated Plaintiff in July 2010 at the request of Disability

Determination Services (DDS).  Tr. 516-22.  At the time of the exam, Plaintiff was taking

Seroquel.  Tr. 517.  She told Dr. Stradinger that the medication helped the "voices quiet down."

Id.  Plaintiff told Dr. Stradinger that she used alcohol currently for pain.  Tr. 518.  She referred to

herself as an alcoholic but noted that "now," she does not "drink like a manic."  Id.  She reported

to Dr. Stradinger that her last drink was a shot of tequila two days before the evaluation, that she

had been in treatment, and that in the last three years, she had a drink once a year.  Id.  Dr.

Stradinger remarked, however, that an odor of alcohol "accompanied" Plaintiff.  Tr. 519.

Dr. Stradinger opined that Plaintiff had the following diagnoses:  alcohol abuse,

provisional; mood disorder, NOS with rule out bipolar disorder; cognitive disorder, NOS with

rule out learning disorders; rule out post-traumatic stress disorder; and rule out schizophrenia.

Tr. 521.  In discussing Plaintiff, Dr. Stradinger noted that although Plaintiff "seemed to firmly

adhere to having schizophrenia today, the possible influence of alcohol, her incongruent mood

and affect, and her incongruence at times suggests a mood disorder and personality disorder

rather than schizophrenia."  Id.  Dr. Stradinger noted that the smell of alcohol and Plaintiff's

difficulty concentrating and being consistent made it difficult to determine exactly what her

primary mental health disorder was.  Id.  She opined that if Plaintiff were not drinking, it was

possible she was exaggerating her symptoms.  Id.  She assessed Plaintiff as likely having a

difficult time interacting appropriately, effectively, and on a sustained basis with supervisors,

coworkers, and the public based on her mood issues.  Id.

Daniel Scharf, Ph.D, evaluated Plaintiff in February 2012.  Tr. 676-81.  He was requested to address alcohol abuse, mood disorder, cognitive disorder, and rule out schizophrenia.  Tr. 676.  Dr. Scharf performed a diagnostic interview, conducted a mental status examination, and reviewed records provided by DDS.  Id.  When asked about her alcohol use, Plaintiff was "vague and scattered" which Dr. Scharf thought was related to her thought and cognitive problems.  Tr. 678.  Plaintiff told Dr. Scharf that at that time, she was drinking alcohol once per week.  Id.  She told him she had had two beers the previous night and that she drank four beers the last time she drank.  Id.  It was "significantly difficult" to get her to describe her past alcohol use.  Id.  Dr. Scharf referred to a July 2010 psychodiagnostic examination, which I assume was the evaluation by Dr. Stradinger, indicating that at that time, Plaintiff reported having drunk alcohol once in the previous year and having been in alcohol treatment.  Id.  However, she smelled of alcohol in that July 2010 examination.  Id.

At the time Dr. Scharf evaluated Plaintiff, she was taking Seroquel.  Tr. 679.  She reported that she consistently had auditory hallucinations with voices being quite critical of her.  Id.  Dr. Scharf described Plaintiff as being irritable, tearful, and laughing inappropriately during the interview.  Id.  He believed that inappropriate laughing was consistent with schizophrenia.  Id.

Dr. Scharf diagnosed Plaintiff as having schizophrenia, paranoid type; depressive disorder, NOS; and rule out cognitive disorder, NOS.  Tr. 680.  He found that she was most likely not capable of managing her own benefit funds if they were awarded.  Tr. 681.  He believed she presented consistently as an individual with schizophrenia and limited cognitive abilities.  Id.  He recognized the likelihood of alcohol abuse, although he noted that it was

19 - OPINION & ORDER

difficult to assess how much she was drinking.  Id.  He opined, however, that "[e]ven with

extended abstinence, the claimant most likely would show ongoing thought problems and

cognitive problems."  Id.  She was quite scattered throughout the exam and had difficulties

presenting information clearly.  Id.  Dr. Scharf thought that further cognitive testing could be

helpful as she had difficulties understanding and remembering short and simple instructions

during his examination.  Id.

Jeffrey Sher, Psy.D., examined Plaintiff in March 2012.  In his March 29, 2012

psychological assessment, Dr. Sher noted that Plaintiff was referred by the SSA for evaluation of

a cognitive disorder, depressive disorder, and a question of schizophrenia.  Tr. 683.  A detailed

history of her substance use and impact on her functioning was also requested.  Id.  Dr. Sher

reviewed Dr. Scharf's and Dr. Stradinger's previous reports as well as other information.  Id.  He

administered several tests, performed a mental status exam, and conducted a clinical interview.

Id.  As relevant here, Dr. Sher noted Plaintiff's long history of alcohol use and dependence.  Tr.

685.  She reported that she had been to rehab, had relapsed, and continued to occasionally have a

beer.  Id.

Based on the testing, interview, and evaluation, Dr. Sher diagnosed Plaintiff with

schizoaffective disorder as well as alcohol dependence, sustained partial remission.  Tr. 689.  He

noted that Plaintiff appeared significantly depressed and had a history of auditory hallucinations

as well as persecutory delusions.  Id.  He concurred, however, with a previous practitioner's

assessment that she did not have a history consistent with schizophrenia because she did not have

the negative symptoms associated with schizophrenia.  Tr. 689-90.  He found her to be quite

impaired with her condition with ongoing auditory hallucinations.  Tr. 690.  He noted her long

relationship with alcohol, and found that it met the criteria for dependence with partial sustained remission.  Id.

>    The ALJ discussed these three opinions after announcing the following:

>    I am unprepared to find that mental health diagnoses noted within the record are valid as the claimant's alcohol consumption is found to taint any psychological diagnosis.  In reaching this conclusion, I find that psychological consultants who have examined the claimant are unaware of the extent of claimant's alcohol abuse history and ongoing alcohol use as they did not have access to record detailed above, which details no noteworthy period of abstinence that would allow for a confident mental health diagnosis.

Tr. 28.

>    In discussing Dr. Stradinger's opinion, the ALJ stated that "[g]iven the record detailed above, the claimant's lack of sincerity regarding her alcohol consumption not only reduces her credibility, but further makes any conclusions reached by Dr. Stradinger unreliable."  Id.  In discussing Dr. Scharf's February 2012 opinion, the ALJ noted that Plaintiff reported to Dr. Scharf that she had had two beers the night before the evaluation and claimed she had four beers the last time she drank.  Tr. 29.  But, the ALJ explained, Plaintiff was seen in the emergency department on March 9, 2012 after falling at home, and her alcohol level was over 400.  Tr. 27, 29.  This, according to the ALJ, indicated a high alcohol tolerance and "strongly suggests the claimant was being less than sincere in reporting the extent of her alcohol consumption to Dr. Scharf."  Tr. 29.

>    As to Dr. Sher, the ALJ noted that in the March 9, 2012 emergency room visit, she reported that she typically drank sixteen ounces of beer in the morning and forty ounces of fortified beer in the evening.  Id.  The ALJ explained that this "contradiction strongly demonstrates the claimant was being less than honest in reporting the extent of her alcohol consumption to Dr. Sher."  Id.  The ALJ concluded that Plaintiff's lack of honesty regarding her

alcohol consumption affected her credibility and also made "any conclusions reached by Dr. Sher unreliable."  Id.  The ALJ further found that Dr. Sher's diagnosis of alcohol dependence in partial remission was contradicted by the record showing six alcohol-related emergency room admissions between March and July 2012.  Id.

The ALJ then summarized his findings regarding the psychologists' diagnoses:

Simply put, the claimant repeatedly misrepresented herself during her consultative evaluations with Dr. Stradinger, Dr. Scharf and Dr. Sher, and as a consequence the conclusions reached by these examiners are tainted, are found to be not reliable, and they are therefore given very limited weight.  It has clearly been shown the claimant had been drinking regularly and to excess during the entirety of the relevant adjudicative period with no period of extended sobriety that would allow for a dependable mental health diagnosis.

Tr. 30.

While this seems to have concluded the ALJ's discussion of the examining psychologists' opinions, the ALJ then went on to discuss Dr. Stradinger's and Dr. Scharf's functional assessments.  Id.  After describing those assessments, he gave them "partial weight given the reliability issues noted above as I find the claimant's presentation during her evaluations was affected by her alcoholism."  Id.[2]  Plaintiff argues that the ALJ improperly rejected Dr. Stradinger's and Dr. Scharf's opinions on the basis of his own conclusion that the diagnoses were invalid because they were not obtained during a period of abstinence.  Defendant argues that the ALJ's rejection was proper because determining that an unreliable claimant has misrepresented information is a specific and legitimate reason for rejecting an examining practitioner's opinion.

_____

[2]  This portion of the ALJ's decision is unclear.  Although he just rejected the mental health diagnoses of the three examining psychologists, he then ascribes "partial weight" to the limitations of Dr. Stradinger and Dr. Scharf, which are based on their mental health diagnoses.

See <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995) (A medical opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted").

Defendant notes that the ALJ made a negative credibility finding regarding Plaintiff's subjective limitations testimony which Plaintiff does not challenge in this appeal.  Defendant also points to evidence in the record establishing that Plaintiff provided information to the examining psychologists regarding her alcohol use which was contradicted by other medical evidence in the record.

I agree with Defendant that the record shows that Plaintiff was drinking more than she reported to the examining psychologists.  I also agree with Defendant that as a matter of law, an ALJ may appropriately disregard an examining practitioner's opinion which is based on the subjective reporting of a claimant the ALJ determines to be not-credible.

The problem here, however, is that the ALJ's opinion is unclear.  The several explanations given by the ALJ for rejecting these opinions, while referring to Plaintiff's lack of candor regarding her alcohol use or the lack of information available to the psychologists, also include the determination that the mental health diagnoses are unreliable because they were not made during a period of abstinence.  Tr. 28 (ALJ is unprepared to find mental health diagnoses valid given that the psychologists were unaware of the extent of her alcohol history "which details no noteworthy period of abstinence that would allow for a confident mental health diagnosis"); Tr. 30 (because Plaintiff misrepresented herself in her evaluations with the three psychologists, their conclusions are tainted and given that the record shows she was drinking regularly, there is no period of extended sobriety that would allow for a dependable mental health

diagnosis).

From this, it is impossible to tell if the ALJ rejected the examining psychologists'
opinions because they were based on subjective reporting by Plaintiff whom the ALJ found not
credible[3], or, if the rejection was because there was no period of abstinence which, in the ALJ's
opinion, was required for a valid mental health diagnosis.  Because one of the bases is, in theory,
recognized by the law as specific and legitimate, and the other basis is, for the reasons explained
in the previous section, not supported in the record, I cannot conclude that the ALJ's rejection of
the examining psychologists' opinions about her mental health diagnoses was without error.

B.  Nonexamining Psychologist

Nonexamining state agency psychologist Bill Hennings, Ph.D., opined that Plaintiff had a
primary diagnosis of affective disorder as well as a substance abuse disorder.  Tr. 183-84.  As the
ALJ notes, Dr. Hennings opined that Plaintiff was capable of understanding/remembering one- to
two-step instructions and nothing more complex; has the concentration, persistence, and pace to
carry out one- to two-step tasks, but nothing more complex; and was incapable of having contact
with the general public.  Tr. 188-89.

After noting Dr. Hennings's assessed limitations, the ALJ stated that Dr. Hennings's
"opinion does deserve some weight, particularly in a case like this in which there exist a number
of other reasons to reach similar conclusions."  Tr. 30.  Plaintiff views this as a partial rejection

---

[3]  In my opinion, even if this were the basis, the ALJ fails to sufficiently explain why the
Plaintiff's misrepresentations about her alcohol abuse make the practitioners' opinions regarding
her mental health diagnoses unreliable.  Although they may not have been informed of the level
of her alcohol consumption, either past or present, all three of them knew she had a history of
alcohol abuse.  Yet, all three offered a variety of mental health diagnoses.  Moreover, Dr. Scharf
opined that even with a period of extended abstinence, Plaintiff would still show ongoing thought
problems and cognitive problems.

by the ALJ of Dr. Hennings's opinion because the ALJ included only the limitation of "simple, repetitive tasks" in the RFC.  Tr. 24, 33.  With that understanding, Plaintiff argues that the ALJ erred.  I agree.

Plaintiff correctly observes that the ALJ's explanation of the treatment afforded Dr. Hennings's opinion fails to explain what the ALJ meant by "some weight" and fails to explain which parts of Dr. Hennings's opinion he accepted and which parts he rejected.  Plaintiff also correctly observes that Dr. Hennings opined that Plaintiff could understand and remember only one- to two-step instructions and has the concentration, persistence, and pace to carry out only one- to two-step tasks.  But, the ALJ's RFC included the limitation of "simple, repetitive tasks" without explanation as to why or how his limitation incorporated Dr. Hennings's limitations. Further, as Plaintiff notes, the only "other reason" previously given by the ALJ was that the examining psychologists lacked complete information about Plaintiff's alcohol use.  But, Dr. Hennings reviewed the record and with awareness of the alcohol abuse, determined her substance abuse diagnosis to be secondary and the affective disorder to be primary.  Finally, Dr. Hennings's limitations to one- and two-step instructions and tasks were based on the presence of her schizoaffective disorder.  Tr. 188-89.  To the extent the ALJ attempted to incorporate those limitations into his RFC by limiting Plaintiff to simple and repetitive tasks, this attempt is inconsistent with the ALJ's rejection of the same or similar diagnoses made by the examining psychologists.

For all of these reasons, I agree with Plaintiff that the ALJ did not sufficiently explain his rejection or partial rejection of Dr. Hennings's opinion.   This was error.  20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (ALJ must explain the weight given to the opinion of a state

agency medical or psychological consultant).

IV.  Inconsistent RFC

Plaintiff argues that the ALJ's decision is internally inconsistent because the two RFCs assessed by the ALJ are the same except for one limitation:  her missing work more than two days per month.  Compare Tr. 24 (RFC including limitations from alcohol abuse), with Tr. 32-33 (RFC omitting any limitations attributable to her alcohol abuse).  Plaintiff points out that the only non-substance abuse severe impairment found by the ALJ was a vision loss in the right eye.  Yet, in the second RFC which ostensibly omits any limitations caused by alcohol abuse, the ALJ included many limitations which can be attributable only to her alcohol use or a to severe mental health impairment.  Tr. 24, 32-33 (both RFCs include limitations to unskilled work, simple repetitive tasks, no more than occasional co-worker contact, no teamwork, and only incidental contact with the public).

Plaintiff argues that if her non-alcohol abuse mental health impairments are all non-severe, it is unclear on what basis the ALJ incorporated these restrictions into the RFC because a non-severe impairment is one that produces no more than a minimal impact on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  Thus, the argument goes, if the mental health impairments are non-severe, there is no basis for including limitations derived from them in the second RFC.  Their presence in the RFC suggests that the ALJ was inconsistent by, on the one hand, rejecting the mental health impairments as severe but on the other hand, incorporating limitations based on those impairments in the RFC.

Defendant responds that any error or inconsistency by the ALJ only benefitted Plaintiff because the second RFC included more, not less, severe restrictions.  Defendant also suggests

26 - OPINION & ORDER

that the ALJ included these restrictions because when considered in combination, non-severe impairments can produce a severe impairment. Defendant argues: "By including psychological limitations in Plaintiff's sober RFC, the ALJ was accounting for the possibility that her non-substance use related psychological issues imposed such limitations. Because the ALJ's determination was reasonable, it should be affirmed." Def's Brief 9.

Defendant's argument overlooks the fact that the ALJ expressly <u>rejected</u> the presence of any "non-substance use related psychological issues." There is no support for Defendant's "combination" argument because the ALJ found only substance abuse and vision loss to be severe impairments and failed to credit any limitations based on any mental health issues, whether severe or non-severe. And, while Defendant is correct that Plaintiff benefitted from the ALJ's inclusion of these limitations, their presence further underscores the confusing opinion produced by the ALJ which raises the possibility of reversible error.

V.  Remand

Plaintiff seeks a remand for proper consideration of medical opinion evidence, for a proper evaluation of lay witness statements, and for a proper credibility assessment. Pl.'s Op. Brief 20; Pl.'s Reply 9. Plaintiff argues that once the improperly rejected evidence in the case is considered and credited as true, it is clear that Plaintiff is incapable of working on a regular and continuing basis and thus is disabled. Therefore, Plaintiff urges the Court to remand for an award of benefits.

In this appeal, Plaintiff does not challenge the ALJ's negative credibility finding and does not challenge the ALJ's rejection of lay witness testimony. Accordingly, I have had no reason to review those parts of the ALJ's decision and they remain intact. That means there is no basis for

applying the "credit as true" rule to Plaintiff's subjective limitations testimony or the lay witness testimony.  As for the medical opinion evidence, the discussion above establishes that at this point, the ALJ's reasoning in support of rejecting the examining psychologists' opinions is confusing and unclear.  Without a more careful explanation, I am unable to determine if the ALJ's rejection was in error.  It would be inappropriate to apply the "credit as true" rule in that context.

Contrary to Plaintiff's argument, there is no basis for applying the "credit as true" rule here.  Remand for additional proceedings is the appropriate remedy because there are still outstanding issues requiring resolution before a disability determination can be made.

## CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this ____ day of _____, 2016

_____
Marco A. Hernandez
United States District Judge